IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBBIE M. KOEN, JONTAE NELSON, JORDAN HOLDER, RHONDA SUMNLERS, KANEESA MALLORY, and ROMELLO ORR,<br><br>    Plaintiffs,<br><br>vs.<br><br>SOUTHERN SEVEN HEALTH DEPARTMENT, RHONDA RAY, TERRY HEISNER, SHARON BURRIS, LISA CHILDS, REBECCA GLODO, DARRICK ARMONSTRONG, RITA MCKINLEY, KATHY SWAFFORD, MARSHAL GRIFFIN, JOE GRIGGS, LONI JO BANKS, JASON TAYLOR, JO ASHLEY ROSS, JAYSON FARMER, KARLA CUNNINGHAM, LINZEY BARGER, ALSION REICHERT, MIKE SHARP, DEBBIE BROWN, JAYSON FITZGERALD, and BRANDON BIERSTEDT,<br><br>    Defendants. | Case No. 23-2657-GCS-DWD |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is Plaintiffs' Motion for the Entry of a Temporary Restraining Order Without Notice (Doc. 3) ("Motion") under Federal Rule of Civil Procedure 65(b), which seeks "a temporary and preliminary injunction preventing Defendants from closing the Cairo Head Start Facility until such time that the case can be set for a preliminary injunction." (Doc. 3, pg. 5).

### I. Procedural Background

Plaintiffs filed the Motion, along with their Complaint (Doc. 1), on August 1, 2023. The action was randomly assigned to United States Magistrate Judge Gilbert C. Sison on August 2, 2023. (Doc. 4). Judge Sison could not rule on the Motion because not all of the parties have had the opportunity to consent to magistrate judge jurisdiction. Accordingly, that same day, the Motion was referred to District Judge Staci M. Yandle. (Doc. 18). Judge Yandle recused, and the Motion was referred to District Judge J. Phil Gilbert. (Docs. 20 & 21). Judge Gilbert also recused, and on August 3, 2023, the Motion was referred to the undersigned. (Docs. 23 & 24). The Cairo Head Start Facility is scheduled to close tomorrow, August 4, 2023. As such, the undersigned immediately considers the Motion.

### II. Plaintiffs' Allegations

Plaintiffs bring this case as a civil rights action under 42 U.S.C. §§ 1981, 1982, 1983, and 1988. (Doc. 1, generally). Plaintiffs seek injunctive relief to prohibit Southern Seven Health Department ("Southern Seven"), and the other named Defendants, from closing the Head Start facility located in Cairo, Illinois. (Doc. 1, pg. 10). According to the Complaint, Southern Seven operates at least ten Head Start facilities in southern Illinois, including the Cairo facility. (Doc. 1, pg. 4). Plaintiffs have learned that Southern Seven intends to close the Cairo facility because it is in need of serious repairs, costing approximately $1,000,000.00 and "the facility is not safe for human habitation." (Doc. 3, pg. 2). Plaintiffs contend that Southern Seven's proffered reasons for closing the Cairo

facility, namely, the need for serious repairs and uninhabitability, are a pretext for race discrimination and/or retaliation.[1] (Doc. 3, pg. 2).

Additionally, Plaintiffs contend that, although the facility needs repairs, it is safe for human habitation and the repairs can be completed for approximately $200,000.00. (Docs. 3, pg. 2; 3-4). More specifically, in support of that claim, Plaintiffs have attached the affidavit of Wesley Wilson, the owner of W.W. Construction, LLC. (Doc. 3-4). Mr. Wilson has examined the Cairo facility and indicates his company would be able to complete the repairs for $187,800.00. The estimate notes the following repairs are needed:

- Remove and replace existing roof and insulation;
- Remove and replace exterior paneling;
- Paint certain walls;
- Replace damaged windows in the classroom;
- Repair damaged flooring in classroom; and
- Install new subflooring and new flooring throughout the rooms.

(Doc. 3-4, pg. 3).

### III.   Legal Standard

A temporary restraining order ("TRO"), which may last no more than 14 days, is an order issued without notice to the enjoined party. *See* Fed. R. Civ. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the

---

[1] According to the Complaint, the Cairo facility services African American families while Southern Seven's other facilities service Caucasian facilities. Plaintiffs contend that Southern Seven would not be closing the Cairo facility if it "were located in a city that was predominately white, where the children enrolled are predominately white, and where the Site Supervisor was also white." (Doc. 1, p. 7). Additionally, Plaintiffs contend that Southern Seven's decision to close the facility is an act of retaliation for grievances and complaints filed by Plaintiff Robbie Koen, the Site Supervisor of the Cairo facility. (Doc. 1, pp. 5-7).

movant before the adverse party can be heard in opposition." *See* FED. R. CIV. P. 65(b)(1)(A). A TRO is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *See Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). To obtain such drastic relief, the movant must carry the burden of persuasion by a clear showing. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Specifically, a movant must demonstrate (1) a likelihood of success on the merits, (2) irreparable harm, and (3) that the balance of the equities and the public interest favor emergency relief. *See* FED. R. CIV. P. 65(b)(1)(A); *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 22 (2008). If the movant can satisfy these requirements, then the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction[.]" *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood, of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). The Seventh Circuit has described this as a "sliding scale" test: "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *See GEFT Outdoors*, 992 F.3d at 364 (citing *Planned Parenthood*, 896 F.3d at 816). Moreover, "[w]here appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the 'public interest')." *See id*.

### IV.   Analysis

Since time is of the essence, the Court assumes for now Plaintiffs have shown a likelihood of success on the merits of their claims. As discussed below, even assuming Plaintiffs met their burden on that requirement, the Motion must be denied.

Plaintiffs argue, if the Cairo facility were to close, then families enrolled at the facility will suffer irreparable harm because "as a practical matter, [they have] no other place to take their children. They will be forced to either put their children at risk or will have to forfeit employment." (Doc. 3, pgs. 4-5). In support of that claim, Plaintiffs attach affidavits from two individuals who have children enrolled at the Cairo facility. (Docs. 3-2; 3-3). One parent states, if the Cairo facility closes, she would have to transfer her daughter, who requires speech therapy, to another facility. (Doc. 3-2, pg. 2). This parent indicates it is unclear whether the other facility she is considering will be able to provide speech therapy. (Doc. 3-2, pg. 2). The second parent states, if the Cairo facility closes, he would have to transfer his child to another childcare facility, such as one located in Mounds, Illinois. (Doc. 3-3, pg. 2). The parent states that transferring his child to the Mounds facility would "not be practical" because it is further away and because his child "is not familiar with Mounds." (Doc. 3-3, pg. 2). The parent also notes he and his wife's conflicting hours of employment, which requires full-time childcare. (Doc. 3-3, pg. 2).

The Court sympathizes with these parents. There is no doubt that locating another caretaker or childcare facility, with necessary accommodations, may present difficulties. These parents may need to travel to a facility that is further away, balance work responsibilities, and adjust to a new childcare setting. However, none of these difficulties rise to the level of irreparable harm. In no way is the Court diminishing the weight of

these circumstances but "inconvenience does not show that harm would be irreparable." *See Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F. Supp.3d 874, 895 (N.D. Ill. 2015). And, importantly, variances in cost related to such inconveniences may be recoverable at law. *See Payton v. Walsh*, 579 F. Supp. 3d 1057, 1061 (S.D. Ind. 2022) (" 'Harm is irreparable if legal remedies are inadequate to cure it. [] Inadequate "does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." ' [Citation]."

Similarly, the Court understands the effects that *could* be felt by the children from the closure of the Cairo facility. Plaintiffs makes various allegations relating to those effects, some uncovered by the parents' affidavits, in the Complaint and Motion. But in the absence of an opportunity for a response by Defendants, the Court "requires more than mere speculation of irreparable harm to afford…such an extraordinary remedy." *See Matta-Ballesteros ex rel. Stolar v. Henman*, 697 F. Supp. 1036, 1038 (S.D. Ill. 1988); *accord Halczenko v. Ascension Health, Inc.*, No. 21-cv-2816, 2021 WL 6196992, *4 (S.D. Ind. 2021) ("Speculative injuries will not support a finding of irreparable harm.").

Finally, Plaintiffs have not shown that balance of the equities and the public interest, which merge when the government is the opposing party, favors a TRO. *See Troogstad v. City of Chicago*, 571 F. Supp. 3d 901, 920 (N.D. Ill. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). When assessing this factor, the Court must weigh the interests favoring an injunction against the consequences to nonparties of granting or denying the injunction. *See id.* (quoting *Abbott Labs. v. Mead & Johnson Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). Here, Plaintiffs admit that they have been informed the Cairo facility will

be closed due to serious repairs, costing approximately $1,000,000, that render the facility "not safe for human habitation." (Doc. 3, pg. 2). Plaintiffs dispute this assertion as pretext and submit that the repairs will only cost around $200,000. (Doc. 3, pg. 2). But the Court cannot ignore the significance of the repairs noted in Plaintiffs' own affidavits, and the possibility that those repairs could render the Cairo facility unsafe for children and caregivers. (Doc. 3-4, pg. 3). Put plainly, the Court's imposition of a TRO could harm the children and caregivers reporting to the Cairo facility. The TRO would, in turn, impose significant costs on Defendants, who would be required to keep the facility open and mandate that their employees report to a potentially unsafe building for work. As such, the persisting questions of fact caution against a grant of the TRO. *See Hribar Trucking, Inc. v. Teamsters, Chauffeurs and Helpers Local No. 43*, 379 F. Supp. 993, 996 (E.D. Wisc. 1974) ("A [TRO] should not issue in doubtful cases where substantial issues of fact persist.").

It is **ORDERED** that the Motion is **DENIED in part** as to the request for a TRO under Rule 65(b) and **DEFERRED in part** as to the request for a preliminary injunction under Rule 65(a). It is **FURTHER ORDERED** that the Motion for an Emergency Hearing (Doc. 13) is **DENIED** to the extent Plaintiffs request a hearing prior to the date oppositional briefing is completed. The Court will schedule an evidentiary hearing on the request for a preliminary injunction at the earliest possible date.

**SO ORDERED.**

Dated: August 3, 2023

_____
DAVID W. DUGAN
United States District Judge