IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBBIE M. KOEN, JORDAN HOLDER, RHONDA SUMNLERS, KANEESA MALLORY, and ROMELLO ORR, | )<br>)<br>)<br>) |
| Plaintiffs,[1] | )<br>) |
| vs. | ) Case No. 23-cv-2657- DWD<br>)<br>) |
| SOUTHERN SEVEN HEALTH DEPARTMENT and RHONDA RAY, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is Defendants' Motion to Dismiss the Amended Complaint and Supporting Memorandum of Law ("Motion") (Doc. 86). Plaintiffs filed a Response in Opposition to the Motion (Doc. 90) and Defendants filed a Reply in Support of the Motion (Doc. 92). As explained below, the Motion is **GRANTED in part** and **DENIED in part**.

**I. Background**

Plaintiffs initiated this case on August 1, 2023, when they filed a Complaint for Damages for Racial Discrimination and for Declaratory and Injunctive Relief (Doc. 1). That same day, Plaintiffs also filed an *Ex Parte* Motion for the Entry of a Temporary Restraining Order Without Notice under Federal Rule of Civil Procedure 65(b) (Doc. 3), which requested a temporary restraining order or, in the alternative, a preliminary

---

[1] Defendants note Plaintiff Holder is identified in the caption of the Amended Complaint, but he is not mentioned anywhere in the body of the Amended Complaint. (Doc. 86, pg. 6 n. 2). Defendants suggest Plaintiff Holder was included in the caption of the Amended Complaint by mistake. (Doc. 86, pg. 6 n. 2).

injunction. The Court denied the aforementioned *Ex Parte* Motion in part and deferred it in part on August 3, 2023. (Doc. 25). More specifically, the Court denied the request for a temporary restraining order without notice, but deferred ruling on the request for a preliminary injunction. (Doc. 25). The Court indicated to the parties that it would schedule a hearing on the requested preliminary injunction at the earliest possible date. (Doc. 25). The hearing on that request is now scheduled for November 20, 2023. (Doc. 87).

Over the course of a month, Plaintiffs attempted to serve each Defendant in advance of a hearing on the request for a preliminary injunction. At a Status Conference held on September 5, 2023, however, Plaintiffs sought leave to amend the Complaint to dismiss unnecessary parties. (Doc. 74). That request was granted. (Doc. 74).

On September 14, 2023, Plaintiffs filed an Amended Complaint for Damages for Racial Discrimination and for Declaratory and Injunctive Relief ("Amended Complaint") (Doc. 84), dismissing one Plaintiff and all but one Individual Defendant. Plaintiff Koen, an African American, is an employee of Defendant Southern Seven Health Department ("Southern Seven") who has been the site supervisor of the Head Start Facility in Cairo, Illinois, since 1996. (Doc. 84, pgs. 2-3). Plaintiff Sumnlers, who is not an African American, and Plaintiffs Mallory and Orr, who are African Americans, have children enrolled at the Cairo Head Start Facility. (Doc. 84, pg. 2). Defendant Southern Seven is allegedly a body politic, incorporated under Illinois law and governed by a board of directors, serving seven counties in Southern Illinois. (Doc. 84, pg. 2). Defendant Ray, as the Executive Director of Defendant Southern Seven, is one of Plaintiff Koen's supervisors. (Doc. 84, pg. 3). She reports to Defendant Southern Seven's Board of Directors. (Doc. 84, pg. 3).

2

Collectively, Plaintiffs allege "Defendants herein decided to close the Cairo Head Start facility for reasons motivated by race as opposed to the implementation of objective criteria." (Doc. 84, pg. 1). According to Plaintiffs, Cairo, Illinois, "is predominately African-American in its racial make up." (Doc. 84, pg. 3). Further, as to Plaintiff Koen, Plaintiffs allege she "received regular raises and bonuses," and was considered "a valuable employee," before 2018. (Doc. 84, pg. 3). Around that time, however, Defendant Ray allegedly joined Head Start. (Doc. 84, pg. 3). She and two other individual employees allegedly made Plaintiff Koen's "life…substantially more difficult." (Doc. 84, pg. 3).[2]

Specifically, Defendant Southern Seven's treatment of the Cairo Head Start Facility, generally, and Plaintiff Koen, specifically, changed in the following ways: (1) Plaintiff Koen "was met with a caustic response" when, in late 2019 or early 2020, she asked the Head Start administrator about a directive regarding the number of enrolled students, "plainly indicating that she was not welcome to ask questions" despite being urged to ask questions about the program in the past; (2) "a campaign of harassment" began against Plaintiff Koen, in July 2020, after learning that a staff member contracted COVID-19 and she, but not Defendant Ray or the Head Start administrator, wanted to inform other employees of that reported illness; (3) Plaintiff discovered the maintenance department was "ignoring work orders," including a work order to replace the windows in the classrooms at the Cairo Head Start Facility, that were delivered to the Head Start administrator; (4) the Cairo Head Start Facility was "consistently" short staffed when

---

[2] The two other individual employees are identified as the Head Start administrator, Jennifer Parks, and the human resource administrator, Emily Boyd. Neither Ms. Parks nor Ms. Boyd are named as Defendants in the Amended Complaint. (Doc. 84, pg. 3).

3

employees called in sick because the Head Start administrator "routinely" decided not to send temporary replacements to fill in; (5) after Plaintiff Koen learned, on May 1, 2023, that Defendant Southern Seven planned to close the Cairo Head Start Facility, the Head Start administrator, in a conversation with Plaintiff Koen, the human resource administrator, and a parent, informed the parent that "she and other administrators were unable to speak with Koen and other Cairo staff because Koen had filed grievances and had complained about the closing of the" Cairo Head Start Facility; (6) Plaintiff Koen filed an internal grievance against Defendant Ray on July 26, 2023, after Defendant Ray, "in an aggressive manner and in an attempt to harass and intimidate" Plaintiff Koen, "put her finger near Koen's face and falsely charged her with calling Senators, Representatives, and other stakeholders" to come and view the Cairo Head Start Facility; and (7) Plaintiff Koen was given notice that she was laid off, effective August 4, 2023. (Doc. 84, pgs. 3-5).

Plaintiffs allege Defendant Southern Seven, which operates nine other Head Start facilities in southern Illinois where "[t]he children enrolled…are predominantly white in racial background," gave no consideration to closing any of the nine other Head Start facilities. (Doc. 84, pg. 3, 5). Also, "substantial repairs have been and are being done at" the Egyptian, Metropolis, Mounds, and Vienna Head Start Facilities. (Doc 84, pg. 5). Despite budgeted funds for the Cairo Head Start Facility, however, "money is not being spent for repairs in Cairo." (Doc 84, pg. 5). Based on the above allegations, "Plaintiffs allege…[the Cairo Head Start Facility] would still be operating if [it] were located in a city that was predominately white, where the children enrolled are predominantly white, and where the Site Supervisor was also white." (Doc. 84, pg. 5).

4

Relatedly, Plaintiffs allege discrimination "against Plaintiff Koen because she is a confident, articulate, and strong woman of African-American descent." (Doc. 84, pg. 5). That discrimination is also allegedly related to "the advocacy she took in relation to her questioning [of] Defendants' decision to close…[the Cairo Head Start Facility] by reaching out to elected officials to come and inspect" the Facility. (Doc. 84, pg. 5). In Plaintiffs' view, "Southern Seven employees and officials were resentful of the fact that Plaintiff Koen stood up for the rights of persons of African American descent with regard to…[the] treatment of" the Cairo Head Start Facility. (Doc. 84, pg. 6). Plaintiffs brought their claims under 42 U.S.C. §§ 1981 (Count I) and 1983 (Count II). (Doc. 84, pgs. 6-8).

Defendants filed the Motion under Federal Rule of Civil Procedure 12(b)(6) on September 28, 2023. Plaintiffs' Response was filed on October 26, 2023, and Defendants' Reply was filed on November 9, 2023. Therefore, the Motion is fully briefed and ripe for a ruling. The parties' specific arguments as to the Motion are incorporated below.

## II. Analysis

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the complaint due to a failure to state a claim for which relief may be granted. *See Firestone Fin. Corp.*, 796 F.3d 822, 825 (7th Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive the motion, which tests the sufficiency of the complaint but not the merits of the case, a plaintiff must allege enough facts to state a facially plausible claim for relief. *See Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (7th Cir. 2020) (quoting *McReynolds v. Merrill Lynch*

5

*& Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012)); *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means enough facts are pled to draw reasonable inferences as to liability. *See Fosnight*, 41 F.4th at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("When a complaint's facts 'do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—"that the pleader is entitled to relief." ' ").

Thus, a complaint need not allege "detailed factual allegations," but it must state enough facts to lift the claim above the speculative level. *See Kloss*, 462 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals" of the elements, supported by mere conclusions, do not suffice, and "a complaint must plead 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " *See Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (quoting *Iqbal*, 556 U.S. at 678); *Taha*, 947 F.3d at 469. Likewise, a complaint does not suffice if it " 'tenders "naked assertions" devoid of "further factual enhancement." ' " *See Taha*, 947 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678). The Court accepts all well-pled facts as true and draws all inferences for Plaintiffs, but, again, it may reject "sheer speculation, bald assertions, and unsupported conclusory statements." *See Trivedi*, 609 F. Supp. 3d at 631 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)); *accord Kloss*, 462 F. Supp. 3d at 874-75; *Taha*, 947 F.3d at 469.

Notably, in *Kaminski v. Elite Staffing*, which involved discrimination in the employment context under Title VII, the Seventh Circuit found the plaintiff failed to allege enough facts to plausibly infer discrimination based on her protected

6

characteristics. *See* 23 F.4th 774, 776-77 (7th Cir. 2022). In that case, "[a]t a high level of generality," the plaintiff alleged a discharge due to her age, race, and national origin. *See id.* at 776. The Seventh Circuit found "Rule 8 requires more," as the plaintiff "include[d] no factual allegations directly or indirectly connecting the termination with her national origin, age, or race." *See id.* The complaint invoked a policy that allegedly resulted in the plaintiff's firing, but it stated "nothing allowing…[the Seventh Circuit] to see a link between any aspect of that policy and her contention that the agency discharged her because she [wa]s Polish, white, or over 50." *See id.* at 777. Therefore, it was not enough for the complaint to observe that federal law bars adverse employment actions on those grounds, as there had to be facts rendering the allegation of a wrongful discharge plausible. *See id.* at 776 (citing *Doe v. Columbia College Chicago*, 933 F.3d 849, 855 (7th Cir. 2019), which noted "[a] plaintiff cannot rely on…generalized allegations alone…but must combine them with facts particular to his case to survive a motion to dismiss").

With these pleading requirements in mind, the Court turns to the Motion.

### A. Count I—42 U.S.C. § 1981

As to Count I, Defendants argue § 1981 "does not allow a right of recovery from state actors based on alleged constitutional violations." (Doc. 86, pg. 2). The prohibition allegedly applies to both governmental entities, such as Defendant Southern Seven, and individuals acting under the State's authority, such as Defendant Ray. (Doc. 86, pg. 2). As such, Defendants argue Plaintiffs' only remedy lies under § 1983. (Doc. 86, pg. 2).

7

In Response, Plaintiffs "reluctantly agree" that the Motion should be granted as to Count I. (Doc. 90, pgs. 1-2). In doing so, Plaintiffs cite the same binding authority, relied upon by Defendants, from the Supreme Court and Seventh Circuit. (Doc. 90, pgs. 1-2).

Upon review of those authorities, the Court **FINDS** it must dismiss Count I. Section 1983 "remains the exclusive remedy for violations of § 1981 committed by state actors," like Defendants Southern Seven and Ray in this case. *See Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) (stating this rule and discussing how *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 735 (1989), which held that § 1983 provides the exclusive federal damages remedy for state-actor violations of the rights guaranteed by § 1981, remains good law after the Civil Rights Act of 1991); *accord Barnes v. Bd of Trustees of University of Illinois*, 946 F.3d 384, 389 n. 1 (7th Cir. 2020)). As such, the Motion is **GRANTED** as to Count I, which is **DISMISSED with prejudice**.

### B. Count II—42 U.S.C. § 1983

Section 1983, in part, states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983; *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (concluding "[l]ocal governing bodies," like Defendant Southern Seven, allegedly a body politic, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where…the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). The Equal Protection Clause of the Fourteenth Amendment bars racial discrimination by state and local officials, so persons subjected to such discrimination may seek relief under § 1983. *See Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021) (citing *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir. 1986)).

A *prima facie* claim of this nature requires Plaintiffs to show (1) they are members of a protected class, (2) they are similarly situated to members of an unprotected class, (3) they were treated differently than members of the unprotected class, and (4) Defendants acted with a discriminatory intent. *See McPhaul v. Bd of Comm'rs of Madison Co.*, 226 F.3d 558, 564 (7th Cir. 2000), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000); *Jackson v. City of Columbus*, 194 F.3d 737, 751-52 (7th Cir. 1999)); *accord Moore v. Freeport Comm. Unit School Dist. No. 145*, 570 F. Supp. 3d 601, 611 (N.D. Ill. 2021); *McDorman v. Smith*, 437 F. Supp. 2d 768, 775 (N.D. Ill. 2006). For *Monell* liability, Plaintiffs must show a constitutional violation caused by Defendant Southern Seven, allegedly a body politic that "may be held liable for its own violations of the federal Constitution and laws," such as through an express policy, a widespread practice or custom, or a final policymaker. *See Moore*, 570 F. Supp. 3d 601, 611 (N.D. Ill. 2021) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)); *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). And, as Defendants note with respect to the individual liability of Defendant Ray, officials in § 1983 lawsuits

9

may only be held accountable for their own misconduct. *See Hess v. Garcia*, 72 F.4th 753, 767-68 (7th Cir. 2023) (citing *Kemp v. Fulton County*, 27 F.4th 491, 497-98 (7th Cir. 2022)); *accord Taylor*, 999 F.3d at 493. In other words, the officials must be personally involved in the constitutional violation and have the specific intent to commit the discrimination. *See Taylor*, 999 F.3d at 493; *see also Thomas v. Chmell*, 569 F. Supp. 3d 732, 737 (N.D. Ill. 2021) ("Individual liability requires personal involvement in the constitutional violation and 'depends on each defendant's knowledge and actions.").

Now, Defendants argue Plaintiffs' § 1983 claim "falls short in several respects." (Doc. 86, pg. 5). First, Defendants note what Plaintiffs appear to concede—Plaintiff Sumnlers is not a member of a protected class. (Doc. 86, pg. 5). The Amended Complaint "makes abundantly clear[] [that] the 'protected class' of people…are African-Americans, which the lawsuit claims were illegally treated differently from whites," so Defendants argue Plaintiff Sumnlers claim "fails in the most basic sense." (Doc. 86, pgs. 5-6).

Second, even though the Amended Complaint adequately alleges that Plaintiffs Koen, Mallory, and Orr are within the protected class at issue, Defendants argue those Plaintiffs have not alleged treatment that is any different than the treatment of individuals outside the protected class. (Doc. 86, pg. 6). Defendants note "the two forms of alleged discriminatory conduct" in the Amended Complaint, including: as to all Plaintiffs, the closing of the Cairo Head Start Facility; and as to Plaintiff Koen, the "racist mistreatment and personal animus" of Defendants. (Doc. 86, pg. 6).

However, Defendants argue it can only be assumed, absent allegations to the contrary, that the closure of the Cairo Head Start Facility affected African American and

non-African American individuals. (Doc. 86, pg. 7). Defendants suggest Plaintiffs "essentially concede[]" this point by arguing Plaintiff Sumnlers, who is not African American, "was equally impacted by the closure of the facility." (Doc. 86, pg. 7). To further illustrate their point, Defendants state this is not a case where "[Plaintiffs] Mallory and Orr's children…[were] denied admittance to the Head Start program[,] while white children were not, or…[where Plaintiffs] Mallory or Orr, as African-Americans, were denied the opportunity to have their children attend one of the other Head Start facilities…after the Cairo location closed, while white parents were not." (Doc. 86, pg. 7). Defendants stress that Plaintiffs Mallory and Orr merely have children who cannot attend a Head Start program at a desired location due to the facility's closure. (Doc. 86, pg. 7).

Further, Defendants note there is no allegation that African American employees of the Cairo Head Start Facility, like Plaintiff Koen, were treated any differently than white employees. (Doc. 86, pg. 8). Instead, Defendants maintain, "[o]nce it was decided to close the facility, all [employees] were in the same boat." (Doc. 86, pg. 8). Also, Defendants submit that Paragraph 34 of the Amended Complaint, which details the treatment of Plaintiff Koen by Defendants, "does not even hint of a race-based animus." (Doc. 86, pg. 8). In Defendants' view, Plaintiff Koen's allegations of mistreatment reflect disagreements over employment-related matters and her disapproval of the "tone of voice" used by certain administrators during those conflicts. (Doc. 86, pg. 8).

Third, Defendants argue Defendant Ray must be dismissed because the allegations do not suggest she personally engaged in misconduct that violated Plaintiffs' constitutional rights. (Doc. 86, pgs. 9-10). Again, as to Paragraph 34 of the Amended

11

Complaint, which details the treatment of Plaintiff Koen, Defendants argue Plaintiffs do not allege Defendant Ray said or did anything to display a race-based animus, "much less a violation of Koen's constitutional rights." (Doc. 86, pg. 10). Likewise, Defendants argue Plaintiffs make no mention of Defendant Ray's role in the closure of the Cairo Head Start Facility. (Doc. 86, pg. 10). Defendants emphasize that Defendant Southern Seven is governed by a board of directors and, according to Plaintiffs' own allegations, Defendant Ray reports to and carries out the wishes of that board of directors. (Doc. 86, pg. 10).

In their Response, Plaintiffs state "a head start facility is arguably not a school, [but] the same rules [that apply to schools] should apply to the Cairo Head Start Facility." (Doc. 90, pg. 3). That is, Plaintiffs argue the Cairo Head Start Facility, like schools, should not be closed for reasons related to race. (Doc. 90, pg. 3).

In doing so, Plaintiffs note Defendants do not dispute this proposition but instead argue the Amended Complaint is inadequately pled under Rule 12(b)(6). (Doc. 90, pgs. 3-4). Plaintiffs emphasize, though, the Cairo Head Start Facility allegedly closed while nine other facilities in "predominantly white communities" did not close. (Doc. 90, pg. 4). Further, maintenance and repairs were allegedly made at the other facilities but not at the Cairo Head Start Facility. (Doc. 90, pg. 4). Likewise, substitute personnel were allegedly sent to the other facilities, but not to the Cairo Head Start facility, when workers were sick. (Doc. 90, pg. 4). Plaintiffs "concluded from the above facts that they were discriminated against because of their race," such that the Amended Complaint suffices under Rule 12(b)(6). (Doc. 90, pg. 4). Whether Defendant Southern Seven intended to discriminate, Plaintiffs continue, "is a question for another day." (Doc. 90, pg. 4).

Further, with respect to Plaintiff Sumnlers, Plaintiffs argue she does not have to be African-American in order to be entitled to relief. (Doc. 90, pgs. 4-5). Plaintiffs analogize this situation to the situation where a white lessor has had standing to assert the right of a black lessee to be free of racial discrimination under 42 U.S.C. § 1982. (Doc. 90, pg. 5); *see Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969)). Plaintiffs also note, in the context of § 1981, "[c]losely-related claims…accord standing to non-minority plaintiffs like Sumnler[s]." (Doc. 90, pg. 5). Therefore, Plaintiffs argue Plaintiff Sumnlers should be permitted to remain in the case, as she "is not some disinterested person who has only an intellectual stake in the suit." (Doc. 90, pg. 6). Rather, Plaintiff Sumnlers and her children, like the other Plaintiffs and their children, is suffering a direct injury because of the alleged race-based decision to close the Cairo Head Start Facility. (Doc. 90, pg. 6).

Here, under the liberal notice-pleading standard contemplated by Rule 8, the Court finds Plaintiffs have adequately demonstrated the *prima facie* case necessary for Count II, such that it can survive the Motion under Rule 12(b)(6). At base, Plaintiffs allege Defendant Southern Seven's decision to close the Cairo Head Start Facility, which purportedly serves children in a "predominantly African-American" community, for race-based reasons. (Doc. 84, pgs. 1-3, 5). The Court agrees, at this early stage, Plaintiffs' baseline allegation is factually enhanced by the allegations that Defendants did not consider closing any of the nine Head Start facilities in "predominantly white" communities, ignored work orders and required maintenance at the Cairo Head Start Facility despite budgeted funds for that purpose and the "substantial repairs" underway at other facilities, and "routinely" declined to temporarily staff the Cairo Head Start

Facility when employees were sick. (Doc. 84, pgs. 3-5). In light of these factual allegations, the Court can draw reasonable inferences as to Defendant Southern Seven's liability.

The Court is of the same opinion as to Defendant Ray, despite Defendants' argument that she is only liable for her own misconduct. As an initial matter, it would be inappropriate for the Court to assess liability at this stage. Also, as with Defendant Southern Seven, the Court finds the baseline allegation of racial discrimination against Plaintiff Koen is factually enhanced by the allegations that she "received regular raises and bonuses," and was considered "a valuable employee," before 2018, when Defendant Ray allegedly joined Head Start and made Plaintiff Koen's "life…substantially more difficult." (Doc. 84, pg. 3). To be sure, at times, certain of Plaintiffs' allegations are conclusory in nature. In sum, though, the Court finds reasonable inferences as to Defendant Ray's liability may be drawn from the properly alleged facts. (Doc. 84, pgs. 3-5). After all, Plaintiff Koen's life was allegedly made "substantially more difficult" due her race as well as her advocacy against closing the Cairo Head Start Facility, which, again, purportedly serves a "predominantly African-American" community. (Doc. 84, pgs. 5-6).

The Court stresses, on this procedural posture, it is not concerned with the evidence or merits of the case. The time will come when Plaintiffs must prove their case and rebut Defendants' legal arguments. For now, though, Plaintiffs were merely required to allege enough facts to state a facially plausible claim for relief. As discussed above, the Court finds they have done so and, notably, this is not a case where the claim is doomed to fail due to "a high level of generality" and the total absence of factual enhancements.

*See Kaminski*, 23 F.4th 776-77; *see also Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (concluding, in the context of a § 1983 claim for racial discrimination by a public employer against a public employee, the district court erred by "demanding too much specificity" in the complaint, where "[a] plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory to survive a motion to dismiss" under Rule 12(b)(6) and instead "need only allege…[the defendant] fired him because of his race). Accordingly, the Motion is **DENIED** as to Count II.

### III. Conclusion

For the foregoing reasons, the Motion is **GRANTED in part** and **DENIED in part**. Count I of the Amended Complaint is **DISMISSED with prejudice**. By virtue of this ruling, the hearing on Plaintiffs' request for a preliminary injunction will proceed as scheduled on November 20, 2023.

**SO ORDERED.**

Dated: November 15, 2023

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge